# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| *as Broadcast Licensee of the December 8, 2012* | § | |
| *Pacquiao v. Marquex IV Fight Program,* | § | |
| | § | |
| *Plaintiff,* | § | Civil Action No.  5:15-CV-1079-XR |
| | § | |
| v. | § | |
| | § | |
| DAVID R. SANDOVAL *a/k/a* DAVID | § | |
| RODRIGUEZ SANDOVAL *a/k/a* DAVID | § | |
| SANDOVAL, *individually, and d/b/a* | § | |
| MCMULLEN BAR *a/k/a* MC MULLEN | § | |
| BAR, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Before the Court is Plaintiff's Motion for Final Default Judgment and Brief in Support (docket no. 8).  After careful consideration of the motion, record, and applicable law, the Court will GRANT the motion.

## BACKGROUND

Plaintiff J&J Sports Productions, Inc. ("J&J") was granted exclusive contractual rights to broadcast the closed-circuit telecast of the December 8, 2012, Pacquiao v. Marquez IV Fight Program (the "Broadcast").[1]  Docket no. 8, Exhibit A–1.  J&J subsequently entered into agreements with various entities in Texas allowing them to publicly display the Broadcast for a fee.  Docket no. 1 at 3; *see* Docket no. 8, Exhibit A–1 (permitting J&J to sublicense the

---

[1] In the original complaint, J&J states that the Pacquiao v. Marquez IV Fight Program included another fight between Yuriorkis Gamboa and Michael Farenas.  (Docket No. 1, n. 1).  According to the affidavit of J&J's investigator, it was the fight between Gamoba and Farenas that the investigator observed.  (Docket No. 8, Exhibit A–2).  J&J's license included selected undercard bouts, such as the Gamboa and Farenas fight, for the Broadcast. (Docket No. 8, Exhibit A–1).

Broadcast). Defendant David Rodriguez Sandoval doing business as McMullen Bar, also known as Mc Mullen Bar ("Sandoval d/b/a McMullen Bar"), is alleged to have displayed the fight without obtaining a licensing contract from J&J. Docket no. 1 at 2–3.

On December 7, 2015, J&J filed its Original Complaint in this Court. Docket no. 1. The complaint alleges that Sandoval d/b/a McMullen Bar knowingly and willfully violated the provisions of the Communications Act of 1934 by unlawfully receiving and exhibiting the Broadcast via satellite. Docket no. 1 at 3; 47 U.S.C. § 605 (2012). J&J seeks $60,000 in statutory damages for the willful violation of the Act. Docket no. 8 at 10. J&J also requests a permanent injunction enjoining Sandoval d/b/a McMullen Bar from future violations of the Act, full costs, and reasonable attorney's fees. Docket no. 1 at 4. After Sandoval d/b/a McMullen Bar failed to respond to the Complaint, J&J filed both a Motion for Entry of Default and a Motion for Default Judgment on March 23, 2016.[2] Docket nos. 7, 8. The Clerk entered default on March 24, 2016. Docket no. 9.

## APPLICABLE LAW

Pursuant to Rule 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). A defendant's failure to respond is considered an admission of "plaintiff's well-pleaded allegations of fact" that relate to liability, but not damages. *Jackson v. FIE Corp.*, 302 F.3d 515, 524–25 (5th Cir. 2002) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). A default judgment "must not differ in kind

---

[2] When a party moves for default judgment, "the district court has an affirmative duty to" determine jurisdiction over both "the subject matter and the parties." *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) (quoting *Williams v. Life Savings and Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). The Court has reviewed the return of service and the pleadings, and concludes that it has personal jurisdiction over Sandoval d/b/a McMullen Bar and subject matter jurisdiction over the claim, which is based on a violation of a federal statute.

2

from, or exceed in amount, what is demanded in the pleadings." Fed R. Civ. P. 54(c). A hearing to determine the amount of damages is unnecessary when that amount can be determined "with certainty by reference to the pleadings and supporting documents." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993) (quoting *Frame v. S-H, Inc.*, 967 F.2d 194, 204 (5th Cir. 1992)).

The Communications Act of 1934, specifically the portion codified at 47 U.S.C. § 605, prohibits the unauthorized publication of certain types of communication. 47 U.S.C. § 605. The Fifth Circuit has clarified the scope of § 605, holding that it applies to satellite communication. *See J&J Sports Prods. v. Mandell Family Ventures, LLC*, 751 F.3d 346, 352–53 (5th Cir. 2014) (distinguishing between proper claims under 47 U.S.C. § 605 and § 553).

There are three relevant damages provisions in 47 U.S.C. § 605. First, as a baseline, the statute allows for damages between $1,000 and $10,000 for violations of the Communications Act. 47 U.S.C. § 605(e)(3)(C)(i). The second provision gives the court the discretion to award additional damages "by an amount of not more than $100,000 for each violation" if the court finds "that the violation was committed willfully and for the purpose of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The final provision provides that the court "shall direct the recovery of full costs, including reasonable attorney's fees to an aggrieved party who prevails." 47 U.S.C. § 605(e)(3)(B)(iii).

## ANALYSIS

### I. Default Judgment

By defaulting, Sandoval d/b/a McMullen Bar effectively admits J&J's allegations of fact and the Court accepts all factual allegations relating to liability as true. *Jackson*, 302 F.3d at 525. Based on the allegations by J&J and the subsequent default by Sandoval d/b/a McMullen Bar, the Court finds that: (1) J&J held exclusive rights to distribute the Broadcast to commercial entities; (2) J&J contracted with various commercial entities in Texas to exhibit the Broadcast for a fee; (3) Sandoval d/b/a McMullen Bar presented the Broadcast at a commercial location via satellite absent an agreement with J&J or other authority to do so; (4) this unauthorized presentation of the satellite Broadcast by Sandoval violated 47 U.S.C. § 605; and (4) Sandoval d/b/a McMullen Bar exhibited the Broadcast for the purpose of securing financial gain.

Further, "[b]ased on the limited methods of intercepting closed circuit broadcasting . . . and the low probability that a commercial establishment could intercept such a broadcast merely by chance, however, courts have held [such] conduct . . . to be willful and for the purposes of direct or indirect commercial advantage or private financial gain." *Entm't by J&J, Inc. v. Al-Waha Enters., Inc.*, 219 F. Supp. 2d 769, 776 (S.D. Tex. 2002). Therefore, this Court concludes Sandoval d/b/a McMullen Bar violated the Communications Act with the intent to achieve private financial gain.

**II. Damages**

The remaining issue is the amount of damages to which J&J is entitled. The statute provides that an aggrieved party may recover an award between $1,000 and $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II). Under J&J's billing model, the licensing fee for a broadcast is based on the capacity of the establishment and varies for each event. Docket no. 8, Exhibit A–

3.   Here, the establishment in question had a capacity of approximately 75 people.[3]   To purchase viewing rights and legally broadcast the fight for this number of people, Sandoval would have been required to pay $2,200.00.  Docket no. 8, Exhibit A–3.  When calculating the amount of statutory damages, "[t]he Court finds it reasonable to treble what would have been the cost had Defendant followed the law."  *Joe Hand Promotions, Inc. v. Garcia*, 546 F. Supp. 2d 383, 386 (W.D. Tex. 2008).  This figure includes monetary savings resulting from the violation of the Communications Act, "as well as any profits made from food and drink sales associated with customers who stayed and watched the fight."  *Id.*  Therefore, because the amount Sandoval d/b/a McMullen Bar would have paid had he legally purchased the rights to the Broadcast was $2,200.00, the total statutory damages under this provision could be as high as  $6,600.00.   The statute caps damages under this section at $10,000.   47 U.S.C. § 605(e)(3)(C)(i).  Accordingly, J&J is awarded $6,600.00 under this section.

Section 605(e)(3)(C)(ii) allows for enhanced damages when the statute is violated "willfully for the purposes of direct and indirect commercial advantage or private gain."  47 U.S.C. § 605(e)(3)(C)(ii).   A defendant's default is an admission that the violation was committed willfully for the purpose of monetary gain. *Entm't by J&J, Inc.*, 219 F. Supp. 2d at 776.  The Court must balance the need to punish illegal piracy with the need to keep damages at a level that will not cause an insurmountable financial burden.  *See id.* at 775–76 (reviewing multiple calculation methods and factors courts consider when assessing statutory damages under § 605).  Given the largest amount of patrons observed viewing the illegal broadcast at the establishment was 75, the Court finds that J&J is entitled to $2,200 in enhanced damages

---

[3] Approximate capacity is based on an estimate by J&J's investigator.  During the Broadcast, the investigator observed a total of 50, 60, and 75 people at the establishment at various times.  Docket no. 8, Exhibit A–2.

under this section, which is the price Sandoval d/b/a McMullen Bar would have been required to pay to legally broadcast the fight to 75 people.

The statute allows an aggrieved party who prevails to recover full costs and reasonable attorney's fees. 47 U.S.C. § 605(e)(3)(B)(iii).  J&J seeks to recover attorney's fees in the amount of one-third of recovery, or alternatively, based on the hourly time for prosecution of this case.  Docket no. 8, Exhibit B.  J&J also seeks to recover attorney's fees for post-trial and appellate services.  Docket No. 8.  J&J submitted the affidavit of David Diaz to establish the reasonable and necessary attorney's fees.  Docket no. 8, Exhibit B.  Based upon the affidavit and the time spent preparing this case, the Court awards reasonable attorney's fees in the amount of $1,000.  The Court declines to award attorney's fees and costs for future appeals.

## CONCLUSION

J&J's Motion for Default Judgment against Sandoval d/b/a McMullen Bar is GRANTED.  The Court awards J&J $9,800.00 ($8,800.00 in total damages and $1,000.00 in attorney's fees).  A separate judgment in favor of J&J shall issue in accordance with Rule 58. J&J is awarded costs and shall file a bill of costs in the form required by the Clerk of the Court, and with supporting documentation, within fourteen days of the entry of the Judgment. *See* Local Rule 54.

It is so ORDERED.

SIGNED this 7th day of April, 2016.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

6